**Mack Hoover WALDEN, also known as William B. Davis**

v.

**Charles MOSLEY et al.**

**No. DC 7024.**

United States District Court,
N. D. Mississippi,
Delta Division.
May 1, 1970.

Fountain Dawson, Greenville, Miss., for petitioner.

Frank O. Wynne, Jr., County Atty., Cleveland, Miss., for respondents.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This is a petition for writ of habeas corpus under 28 U.S.C. § 2241 brought by Mack Hoover Walden, alias William Baine Davis, who is presently incarcerated in the Bolivar County jail at Cleveland, Mississippi. Petitioner seeks his immediate release therefrom on the ground that the warrant of extradition to North Carolina under which he is being held is invalid. He also seeks immunity from prosecution in Leflore County, Mississippi on a burglary charge, for which a detainer has been placed against him in Bolivar County, asserting that the evidence supporting the Leflore County indictment was the fruit of illegal arrest, search, seizure

and custodial interrogation. The affidavits now on file reveal the pertinent facts in the case to be as follows:

Petitioner was arrested by Cleveland city policeman B. D. Henderson at 2 a.m. on December 17, 1969, as petitioner was driving south on Highway 61 in Cleveland. Henderson testified at a state habeas corpus hearing that the station had called him and told him of a complaint against petitioner from a local cab stand. When he saw petitioner weave across the centerline, Henderson stopped him, placed him under arrest for driving while intoxicated, and took him to the Bolivar County jail where all city prisoners are kept. There he was booked for DWI and searched. The search revealed $2,352 in cash, including eleven $100 bills. His driver's license, which was from Georgia, gave his name as William B. Davis; his automobile tag was from Tennessee. Later in the morning of the 17th, sometime after 9 a.m., petitioner was allowed to make a phone call to Fountain Dawson, an attorney of Greenville, who called Deputy Sheriff Robert Baldwyn about posting bond for petitioner on the DWI charge. Charles Jacobs, attorney of Cleveland, Mississippi, was also engaged to represent petitioner.

When Cleveland Chief of Police Charles Mosley arrived at the jail that morning and was informed of the large amount of cash found on petitioner, he immediately summoned John Pressgrove, investigator for the Mississippi State Highway Patrol. Upon Mr. Pressgrove's arrival, he and the other officers began to question him. At some point during that interrogation petitioner's attorneys appeared, advised him not to answer any more questions, and tendered a $150 bond to Chief Mosley for petitioner's release. At about this time Mr. Pressgrove received word from Jackson that petitioner's driver's license was fraudulent and was the same one which had been used to rent a car at the Hinds County Airport at Jackson. Chief Mosley then told attorneys for petitioner that he was holding petitioner

on the driver's license charge as well as the DWI and that the original $150 bond would not cover both charges. Petitioner's possible involvement in a December 15, 1969, safe burglary at Schlater was also mentioned. Thereafter, over the objections of his attorneys, petitioner was fingerprinted and mugged by Deputy Sheriff Baldwyn. Later that afternoon a telegram from J. P. Wilson, Chief of the Fugitive Section of the North Carolina Department of Correction, requested Chief Mosley to hold petitioner as an escapee from a North Carolina prison.

Unable to secure petitioner's release on bond that day, attorney Dawson contacted this court by telephone the following day, December 18, 1969, to request a hearing date on a petition for writ of habeas corpus. The court informed him through its law clerk that because petitioner was a state prisoner he should first seek habeas relief in state court.

On December 19, 1969, a warrant for petitioner's arrest for burglary of W. C. Burroughs' store in Schlater, Mississippi, was issued by Justice of the Peace W. B. Crump of Leflore County. On that same day petitioner filed an application for a writ of habeas corpus in the Circuit Court of Bolivar County, Mississippi, alleging that he was illegally arrested and incarcerated and asking that he be released absolutely, or on his own recognizance, or on his $150 bond already tendered. On December 29, 1969, an evidentiary hearing was held before Circuit Judge E. H. Green at which petitioner was represented by attorneys Jacobs and Dawson and at which all police and sheriff's officers connected with petitioner's arrest and incarceration testified and were cross-examined. Judge Green held that petitioner's incarceration was proper in view of the warrant for his arrest from Leflore County and the telegram from the North Carolina Department of Correction asking Chief Mosley to hold him as a fugitive, and refused to grant the writ.

Petitioner's attorneys then filed an original petition for writ of habeas cor-

pus in the Supreme Court of Mississippi, which was denied without opinion on January 12, 1970. His attorneys also appealed the Bolivar County Circuit Court's denial of his application, which denial was affirmed without opinion on March 16, 1970. In the interim, on March 5, 1970, the grand jury of Leflore County indicted petitioner for burglary of W. C. Burroughs' safe in Schlater and Norman C. Brewer, an attorney of Greenwood, Mississippi, was appointed to represent him. That case was then continued to the June 1970 term of Leflore County Circuit Court, and a detainer filed against petitioner in the Bolivar County jail. This court was notified yesterday by telegram from George Everett, District Attorney for the Fourth Judicial District of Mississippi, who is responsible for the Leflore County prosecution, that the Leflore charge will not be pursued and that he will not delay petitioner's extradition to North Carolina.

On March 25, 1970, petitioner filed the present application for writ of habeas corpus in this court. Said petition alleged that petitioner's arrest in Cleveland was without warrant or probable cause and that officers at the Bolivar County jail conducted an illegal search of petitioner and illegally seized his automobile and personal effects and illegally fingerprinted him. Said petition further alleged that petitioner's North Carolina convictions and sentences were invalid because his guilty plea to the original charge of burglary in North Carolina in 1951 when he was 17 years old was not voluntarily or knowingly made and was made without the assistance of competent counsel. The petition further alleged that the North Carolina authorities waived all right to petitioner by failing to requisition him after his escape from North Carolina in 1956 un-

til after he had served a federal sentence for escape in South Carolina in 1958, which caused him to serve his North Carolina sentence by installments. Petitioner further alleges that the failure of North Carolina authorities to request his extradition from South Carolina until after he served his South Carolina sentence deprived petitioner of his right to a speedy trial on the North Carolina escape charge and that the North Carolina and South Carolina escape charges should have been made to run concurrently.

Petitioner now seeks the following relief from this court:

(1) Release and immunity from extradition to North Carolina;

(2) Release and immunity from prosecution on the Leflore County charge; or

(3) Release on reasonable bail pending prosecution on the Leflore County charge.

On March 27, 1970, this court ordered named respondents Charles Mosley, Chief of Police of Cleveland, L. B. Williams, Sheriff of Bolivar County, John Pressgrove, Investigator for the Mississippi Highway Patrol, John Arterbury, Sheriff of Leflore County, and Frank Wynne, County Attorney for Bolivar County, to show cause within 10 days why a writ of habeas corpus should not issue. On April 3, 1970, respondents answered, alleging that petitioner was being held solely for extradition to North Carolina authorities and not on the Leflore County charge and that such incarceration was proper under Miss. Code 1942 Ann. § 2816,[1] the Mississippi statute which forbids release by habeas corpus of prisoners held for extradition to another state. Attached to the answer were numerous affidavits showing

---

1. § 2816. Not to apply in certain cases.
   "Nothing in this chapter shall authorize the discharge of any person convicted of an offense, or charged with an offense committed in any other part of the United States, and who, agreeably to the Constitution of the United States or the laws of the State, ought to be delivered up to the executive power of the state or territory where the offense is charged to have been committed; nor of any person suffering imprisonment under lawful judgment."

petitioner's record of convictions and escapes in North Carolina, the request for extradition from the Governor of North Carolina, the warrant allowing extradition from the Governor of Mississippi, and a certified transcript of the state habeas corpus hearing.

On April 9, 1970, petitioner traversed respondents' answer, denying their allegations and citing authority in support of his contentions. On the same day, which was 13 days after the order to show cause was entered, respondent Arterbury answered by his attorney, James W. Burgoon, admitting that petitioner had been indicted in Leflore County and that an attorney had been appointed to represent him, but denying all other allegations of the petition. On the following day, Mr. Dawson, attorney for petitioner, moved to quash the answer of respondent Arterbury on the ground that it was not timely filed. Although filed late, Arterbury's answer does not contain any significant new matter not pre-

viously pleaded. Therefore, petitioner's motion to strike is denied. The records and files being complete, the petition is now before the court for decision.

■ This court has jurisdiction under 28 U.S.C. § 2241.[2] By his petitions in the Circuit Court of Bolivar County and the Supreme Court of Mississippi, petitioner has sufficiently exhausted his state remedies.[3]

■ Extradition of fugitives between states is essentially a federal question arising under the United States Constitution, Article 4, Section 2, Clause 2.[4] That clause is not self-executing, but is implemented by 18 U.S.C. § 3182.[5] State law which conflicts with the overriding federal legislation in the extradition area will be disregarded, but may be used to supplement federal law in cases where the federal law is unclear or silent.[6] The Mississippi statute governing interstate extradition of fugitives is Miss.Code 1942 Ann. § 3981.[7]

2. As to whether extradition cases fall under § 2241(c) (1) or § 2241(c) (3), see Sokol, Federal Habeas Corpus, § 4.2C pp. 45–47.

3. Lizana v. Alabama, 394 F.2d 512 (5 Cir. 1968); Hamric v. Bailey, 386 F.2d 390 (4 Cir. 1967); United States ex rel. Bagley v. LaVallee, 332 F.2d 890 (2 Cir. 1964).

4. "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

5. Kentucky v. Dennison, 65 U.S. (24 How.) 66, 16 L.Ed. 717 (1860); 18 U.S.C. § 3182. Fugitives from State or Territory to State, District or Territory: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief

magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

6. 31 Am.Jur.2d 927, Extradition § 5.

7. Miss.Code 1942 Ann. § 3981:
   "It shall be the duty of the governor, on demand made by the executive authority of any other state, territory, or district, for any person charged, on affidavit or indictment, in such other state, territory, or district, with a criminal offense, and who shall have fled from justice, and be found in this state, the demand being accompanied with a copy of the affidavit or indictment, certified as authentic by such executive authority, to cause the offender to be arrested and delivered up to the authority of such state, territory, or district, for removal to the jurisdiction having cognizance of the offense, upon payment of the costs and expenses consequent on arrest; and

The petition presents three basic questions:

I. Is a petitioner facing extradition entitled to bail pending the determination of a habeas corpus proceeding challenging his extradition?

II. May a petitioner redress pre-trial violations of his constitutional rights by habeas corpus prior to trial?

III. May a petitioner challenging his extradition attack his conviction in the demanding state by habeas corpus in the asylum state?

There is a conflict of authority as to whether a petitioner challenging extradition in a habeas corpus proceeding is entitled to bail pending the determination of that proceeding. Although both federal and state laws generally provide for bail wherever possible when it does not endanger the public,[8] the cases have often held that such provisions are inapplicable to extradition proceedings.[9] One early Mississippi case[10] held that the Mississippi extradition statute, Miss.Code 1906, § 2446, predecessor of the present extradition statute, specifically forbade bail in extradition proceedings in spite of the provision of the Mississippi Constitution specifically requiring bail in all non-capital cases.[11]

The reasoning behind the rule refusing bail appears to be that the petitioner's right to bail will be afforded him in the demanding state pending trial there.[12] In the relatively few reported cases in which a petitioner has been admitted to bail pending a habeas corpus hearing on extradition, it was almost always *before* the governor of the asylum state had issued his warrant of rendition where it appeared there might be a substantial delay before the petitioner would be extradited and have an opportunity to make bail in the demanding state.[13]

■■ In the present case, although it now appears that petitioner should perhaps have been admitted to bail on the Leflore County charge,[14] and even on the North Carolina extradition warrant before the rendition warrant was executed, since the Governor of Mississippi has now issued a warrant of rendition, and since the Mississippi authorities do not intend to prosecute petitioner here, his admission to bail at this time would be improper and is denied.

■ Turning to the alleged violations of petitioner's constitutional rights by Mississippi law enforcement officials in the form of illegal arrest, search, seizure, fingerprinting and custodial interrogation, even assuming petitioner to be correct in those allegations, this court has no authority to grant petitioner an absolute release from custody and immunity against either prosecution in Mis-

it shall be the duty of the governor to demand and receive fugitives from justice for offenses committed in this state."

8. Rule 46, F.R.Crim.P.:
"Release on Bail.
(a) Right to Bail.
(1) Before Conviction. A person arrested for an offense not punishable by death shall be admitted to bail. A person arrested for an offense punishable by death may be admitted to bail by any court or judge authorized by law to do so in the exercise of discretion, giving due weight to the evidence and to the nature and circumstances of the offense."
Mississippi Constitution, Art. 3, § 29:
"Excessive bail shall not be required, and all persons shall, before conviction,

be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great."

9. 56 A.L.R.2d 668, 677.

10. Ex parte Edwards, 91 Miss. 621, 44 So. 827 (1907).

11. Fn. 7, supra.

12. See the discussion at 56 A.L.R.2d 677.

13. 31 Am.Jur.2d 943, Extradition § 27. See cases at 56 A.L.R.2d 676.

14. It is clear that if petitioner had thereafter been extradited to North Carolina, his bail on the Leflore County charge would not have been forfeited therefor. Phillips v. Mississippi, 185 So.2d 157 (Miss.1966).

sissippi or extradition to North Carolina as redress for those constitutional violations. As the Supreme Court of the United States has consistently held, violations of constitutional rights such as those alleged by petitioner herein can be redressed only by excluding at trial all evidence which was obtained in violation of petitioner's constitutional rights.[15] It is true that in the present case, since the Mississippi charges against petitioner are not being prosecuted, he may never have a chance to redress violations of his constitutional rights by exclusion of the fruits thereof as evidence at his trial. Nonetheless this court is without power to afford petitioner another remedy. As recently as March 25, 1970, the Fifth Circuit Court of Appeals reversed a Florida district court's decision quashing an indictment prior to trial on the ground that defendants had made self-incriminatory statements before the grand jury without Miranda warnings or the advice of counsel. The Fifth Circuit succinctly remarked, in overruling the district judge, that "the remedy in such a case lies in the exclusionary rule, not in a pre-trial federal habeas corpus proceeding." [16]

By the same reasoning, petitioner would be unable to redress the alleged violations of his constitutional rights in Mississippi by habeas corpus proceeding in North Carolina. His only possible remedy appears to be by exclusionary motion at his trial for escape in North Carolina, the success of which is highly dubious in view of the fact that courts in demanding states generally will not review anything that happened in the asylum state prior to extradition.[17]

Petitioner further challenges his extradition to North Carolina on the ground that his convictions there were illegal because obtained in violation of his right to competent counsel and because his guilty pleas there were not voluntary. It is established beyond dispute that such questions may be raised only in the demanding state and not in the asylum state by habeas corpus.[18] It is fundamental to our federal system that neither the courts of the asylum state, nor federal courts sitting in that state, seek to determine the constitutionality of prosecutions in the demanding state. It is for the courts of the demanding state in the first instance to adjudicate the merits of petitioner's claims. Should petitioner be denied relief in the state courts of North Carolina, he is entitled to raise his constitutional questions in federal court there. From the file in this case it appears that petitioner has never raised these points by seeking postconviction relief in either the state or federal courts of North Carolina.[19]

The only questions which may be raised by habeas corpus in the asylum state are:

(1) Whether a crime was charged in the demanding state;

(2) Whether the petitioner is the person so charged;

(3) Whether the petitioner was in the demanding state when the crime was committed.[20]

Although the Constitution and implementing statute refer to extradi-

---

15. United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966).

16. Mattox v. Carson, 424 F.2d 202, p. 204 (Fifth Circuit, March 25, 1970).

17. Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886) ; Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952) ; Thompson v. Bannan, 298 F.2d 611 (6 Cir. 1962).

18. Woods v. Cronvich, 396 F.2d 142, 143 (5 Cir. 1968). On exhaustion of state remedies in North Carolina, see Sokol, supra, pp. 46–47.

19. The only post-conviction relief petitioner is shown to have sought outside Mississippi was a § 2255 motion filed in South Carolina in 1961, which resulted in a reduction of petitioner's federal interstate flight sentence from 10 to 5 years.

20. Woods v. Cronvich, supra ; Smith v. Gross, 2 F.2d 507 (5 Cir. 1924) ; Bishop v. Jones, 207 Miss. 423, 42 So.2d 421 (1949).

tion of one "charged with crime", and although there is no showing here that petitioner has yet been charged in North Carolina with the crime of escape, it is well-settled that a convict who escapes may be extradited from an asylum state in which he is found as a fugitive from justice, on the ground that he is a convict whose time has not expired, and who, therefore, is "charged with crime", the conviction being conclusive proof that he was charged.[21]

From the affidavits attached as exhibits to respondents' answer, it appears that on May 5, 1967, one Mack Hoover Walden, while an honor grade inmate on the Stanly County, North Carolina prison farm serving a 15-year sentence for armed robbery in Mecklenburg County, North Carolina in 1961, and/or a 2-year sentence for carrying a concealed weapon in Cabarrus County, North Carolina in 1966, escaped from custody by simply walking away. The affidavits also show that an application for requisition of said Mack Hoover Walden was sent to Robert W. Scott, Governor of North Carolina, by V. L. Bounds, Commissioner of Correction for North Carolina on January 6, 1970, requesting that the Governor seek extradition of said Mack Hoover Walden, alias William B. Davis, from Chief of Police Charles Mosley of Cleveland, Mississippi by application to the Governor of Mississippi. These affidavits identify petitioner by name as the fugitive and necessarily aver that he was in North Carolina at the time the escape occurred.

▓▓▓ Ex parte affidavits may be, and customarily are, used in extradition proceedings.[22] They make a prima facie case of the truth of their contents, or as stated by some cases, create a presumption that the crime charged was committed and that the person charged therein committed it, and can be rebutted only by clear and convincing evidence.[23] Petitioner does not deny that he was convicted and sentenced on the North Carolina charges, nor that he escaped while serving the sentences in North Carolina, but alleges that the convictions were invalid on the several grounds already discussed. Since the only question before this court is whether there was a crime charged in North Carolina, and the respondents' affidavits make a prima facie showing that there was a crime charged in North Carolina, and petitioner has failed to rebut that showing,[24] the court holds that a crime was committed in North Carolina and that petitioner was the person charged therewith and that he was present in North Carolina at the time. The affidavits filed in this cause conclusively showing that petitioner is entitled to no relief from this court, his request for an evidentiary hearing on the issues herein raised is denied.[25] The court notes that the petition is denied without prejudice to petitioner to pursue his post-conviction remedies in the courts of North Carolina on all grounds asserted herein.

21. 78 A.L.R. 420, Extradition of Escaped or Paroled Convict.

22. Smith v. Idaho, 373 F.2d 149 (9 Cir. 1967), cert. denied 388 U.S. 919, 87 S.Ct. 2139, 18 L.Ed.2d 1364; McEwen v. Mississippi, 224 So.2d 206 (Miss.1969).

23. Daugherty v. Hornsby, 151 F.2d 799 (5 Cir. 1945); United States ex rel. Vitiello v. Flood, 374 F.2d 554 (2 Cir. 1967); Smith v. Idaho, supra; Tyler v. Pierce, 216 Miss. 498, 61 So.2d 309 (1952).

24. Cohen v. Warden, etc., 252 F.Supp. 666 (D.C.Md.1966).

25. Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).